463 P.2d 540

Robert F. BEAUGUREAU, Appellant,

v.

Nonna L. BEAUGUREAU, Appellee.

No. 1 CA–CIV 1057.

Court of Appeals of Arizona.

Division 1.

Jan. 15, 1970.

Rhodes, Killian & Legg, by John G. Hough, Mesa, for appellant.

Stephen W. Connors, Phoenix, for appellee.

HOWARD, Chief Judge.

The order herein sought. to be reviewed was entered in post-decretal proceedings to enforce certain provisions of a property settlement agreement incorporated into a 1963 Maricopa county superior court decree of separate maintenance. This agreement, which denominated appellant as Second Party and appellee as First Party, recited:

"Second Party agrees:

\* \* \* \* \* \*

f. To pay to First Party as and for the support and maintenance of Bonna Beaugureau the sum of One Hundred Fifty Dollars ($150.00) per month, and as and for the support and maintenance of Judith Irene Beaugureau the sum of One Hundred Fifty Dollars ($150.00) per month so long as said minor children reside with and are in the custody of First Party; \* \* \* and provided further, that during the month when Second Party shall have, as hereinafter provided, the custody of the said minor children, Second Party shall be relieved of said support and maintenance payments to First Party."

The agreement further provided that the mother have custody and control of the minor children with the exception that the father "shall have custody of said children during one summer month commencing with the year 1963."

The parties also mutually agreed:

"First Party shall be responsible for twenty-five per cent (25%) and Second Party shall be responsible for seventy-five per cent (75%) of the cost of the college education and the major medical expense of the minor children of the parties until they attain the age of 21 years, provided only:

(1) The parties shall mutually agree upon the college training, the place and cost thereof;

(2) The parties shall mutually agree upon the nature, cost and type of treatment with respect to any such major medical expense."

In 1968, the appellant petitioned the trial court for an order to show cause directed to the appellee. The appellee responded thereto and counter-petitioned for an order requiring the appellant to appear and show cause why he should not be required to pay to appellee the sum of $1,716.88. This sum represented the total of seventy-five per cent of certain purported medical expenses incurred on behalf of the minor children and certain delinquent child support payments. Reasonable attorneys' fees were also requested.

At the time set for hearing of the petition and counter-petition, the court quashed the appellant's order to show cause, and proceeded to hear the matters alleged in the counter-petition. The appellee presented evidence as to expenses incurred on behalf of both children for orthodontia and dental work, a tonsillectomy and hospitalization. She also testified as to total or partial nonreceipt of certain support payments from 1965 through 1968.

At the conclusion of the hearing, the court found that the sum of $991.88 for hospital and medical expenses of the minor children (seventy-five per cent of the sums expended) was due to appellee. It also found that the sum of $362.50, arrearages on child support, was due and directed that the parties pay their own attorneys' fees and costs. On appeal, appellant challenges both awards.

## MEDICAL EXPENSE

As to the "medical" expense award, he contends (1) that expenditures for dental and orthodontia work do not qualify as "medical" expenses, and (2) that he never agreed as to the nature, cost and type of expense, a contractual prerequisite to his obligation to pay seventy-five per cent thereof.

■ Since the meaning of the term "major medical expense,"[1] as used in the property settlement agreement, is not clear on its face, inquiry into the circumstances prompting the agreement would have been appropriate to ascertain the parties' intention. Hudson v. Hudson, 220 Ga. 730, 141 S.E.2d 453 (1965). Examination of the record below discloses that appellant never raised the question of whether these expenditures qualified as "medical" expenses. Appellant, however, having denied his obligation to share in the cost of the dental work solely on the grounds of lack of mutual agreement, is foreclosed from urging a new defense on appeal. Rubens v. Costello, 75 Ariz. 5, 251 P.2d 306 (1952); Kenyon v. Kenyon, 5 Ariz.App. 267, 425 P.2d 578 (1967). We therefore limit our consideration to the effect of appellant's non-agreement to the expenditures in question.

■ Appellee testified that her attempts to contact him (he lived in Nevada and she in Arizona) via telephone were unavailing. Therefore, according to her, the respective medical and dental specialists wrote to appellant informing him of the need for treatment. Appellant did not deny receipt of these communications, nor did he communicate his disapproval of or refusal to pay for the recommended treatment. The various letters sent to appellant were admitted into evidence and considered by the trial court in reaching its decision. Appellant, however, has not designated them as part of the record, hence we accept as true appellee's testimony pertaining thereto and conclude that the trial court was correct in impliedly finding that appellee tried to effect mutual agreement.

We are of the opinion that appellant could not resist payment of his pro rata share of these expenses by reliance on the terms of the property settlement agreement. In every agreement, there is an im-

plied covenant of good faith and fair dealing, i.e., an implied obligation by each party to cooperate with the other so that he may obtain the full benefit of performance. Miller v. Othello Packers, Inc., 67 Wash.2d 842, 410 P.2d 33 (1966); Coleman Engineering Company, Inc. v. North American Aviation, Inc., 65 Cal.2d 396, 55 Cal.Rptr. 1, 420 P.2d 713 (1966). Such implied terms are as much a part of a contract as are the express terms. Golder v. Crain, 7 Ariz.App. 207, 437 P.2d 959 (1968). Although mutual agreement was a prerequisite to appellant's obligation to perform, he was foreclosed from relying on the condition precedent since its non-performance was caused by him. Siegal v. Haver, 4 Ariz.App. 119, 417 P.2d 928 (1966); Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674 (1944).

■ The trial court's refusal to permit appellant's counsel to question appellee as to the existence of hospital insurance is also urged as error. Appellant argues, in essence, that the parties intended to share only the "actual expenses" and that such "actual expenses" could only be determined by inquiry into insurance reimbursement. According to him, the 75%–25% ratio was to be based on a net figure, cost less the amount paid by insurance.

The trial court concluded that the existence or non-existence of insurance was not germane to the issues and we cannot say it erred. The property settlement agreement is silent with regard to the effect of insurance on the parties' respective obligations. Each party agreed to be responsible for a proportionate share of the "cost of the college education and the major medical expense of the minor children. * * *" The word "cost" is capable of variable meaning depending upon the circumstances of its use. Singer Metals, Inc. v. Industrial Management Corp., 116 Cal.App.2d 85,

---

1. The expression "medical expense" has been given a broad, comprehensive meaning by some courts so as to include eye examination and the cost of eyeglasses prescribed, see Jones v. Jones, 116 Cal. App.2d 604, 254 P.2d 67 (1953) and denture work, see Bender v. People, 203 Misc. 627, 115 N.Y.S.2d 810 (1952).

253 P.2d 515 (1953). In common parlance, however, it is synonymous with "charge" or "price." Webster's Third New International Dictionary.

 Separation agreements are to be given a reasonable construction so as to accomplish the intention of the parties. 42 C.J.S. Husband & Wife § 598. The construction of the subject agreement, urged by appellant, would require a reading into the agreement of a limitation of the word "cost." Courts, in construing contracts, cannot modify them. Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P. 2d 318 (1966). We conclude, as did the trial court, that the plain meaning of the word "cost" controlled and was conclusive as to the intention of the parties.

## CHILD SUPPORT

Appellant challenges the allowance of arrears for child support on the grounds that he was relieved of any obligation to pay child support for a one month period in the summer when he was to have custody of the minor children. He contends that a father need not make child support payments for periods in which the mother has refused to allow him visitation, citing numerous cases in support of his position. We do not consider his citation of authority apposite since our examination of the evidence discloses that no support payments were allowed for any period during which visitation may have been withheld by appellee. Her testimony that the sum of $225.00 for the month of November, 1965 was not paid is undisputed. Under the property settlement agreement, even as subsequently amended by stipulation of the parties, the sum of $300.00 was required to be paid for this month. In June, 1968 according to appellant's own testimony, he consented to one daughter not visiting him. We therefore are unable to find error in the trial court's allowance of $362.50 as arrearages.[2]

2. It would appear that the trial court disallowed $12.50 to the appellee for the month of June, 1968 since, according to

.Finding no error in the proceedings below, the order is affirmed.

KRUCKER and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

her testimony, the daughter did visit her father for a few days.